## LANE *v.* THOMPSON.

For cutting trees by a third person, the tenant for life of the land on which they were cut may bring trespass *quare clausum* for the disturbance of his possession, and the reversioner may bring case for the injury to the reversion; but when the trees are once cut and severed, the tenant ceases to have any interest in or right to them, and they become the absolute property of the reversioner. And this absolute ownership draws after it and with it the legal possession, so that the owner may maintain trespass *de bonis*, for carrying them away and converting them, even though he never had the actual possession of them.

When the court, by a knowledge of the facts existing, and the situation of the parties at the time when a deed was made, can ascertain the intention of the grantor, they will construe the deed so as to give effect to that intention, when they can find enough in the description, after rejecting all the particulars in which it is false or mistaken, to identify the land.

The real estate of a person deceased vests immediately in the heir, liable to be divested by a sale by the administrator in case the personal property shall be insufficient to pay the debts, and liable, also, to be suspended by a decree of insolvency. But until such sale by the administrator, or such decree of insolvency, the heir has the right to the possession, and may maintain trespass for any injury done to it.

The title of the administrator to the real estate of his intestate does not relate back as in case of personal property from the decree of insolvency to the decease of the intestate, but commences with the decree of insolvency, and exists only subsequent to that.

TRESPASS. First count for breaking and entering the plaintiff's close in Swanzey, joining the defendant's, and the same formerly

owned by Lucy Thompson, and set off to her as one of the heirs of her father's estate, and there cutting down and carrying away and converting to his own use fifty cords of the plaintiff's sapling pines, of the value of $150.

The second count was trespass *de bonis asportatis* for taking, carrying away and converting to his own use fifty cords of the plaintiff's saplings, of the value of $150.    Plea, the general issue.

Upon the trial it appeared that the close in question was part of the estate of John Thompson, who died in 1807.    He had several sons, and a daughter Lucy, and his real estate was divided by a decree of the court of probate, and the close in question was set off to Lucy.

About 1812 she married Stephen Holbrook, and had one daughter, Belinda, born in 1816 ; they moved to the State of New-York, and Lucy died there in 1836, and her husband is dead.    Their daughter Belinda married Robert Holinbeck, Jr., and they had a child, but none living at her decease, in 1844.    Her husband moved to Wisconsin, about ten years ago, and a witness testified that he had heard he was still living, but there was no evidence that he ever interfered with the possession of said close.

Lucy Thompson was the second wife of Stephen Holbrook.    His first wife died before 1812, leaving a son, Austin Holbrook, and a daughter, who died unmarried, in 1827.

The plaintiff derives his title from Austin Holbrook, who was half brother to Mrs. Holinbeck, under a quitclaim deed to Ezekiel F. Lane, of " all my right, title and interest in and to the farm situate partly in Swanzey and partly in Richmond, being the same owned by Samuel Thompson, deceased ; also, all my right by inheritance of any part of said farm, in common or divided, and set off to my ancestor and now occupied by Samuel Thompson"—deed dated October 15, 1855.

One of Lucy's brothers, Samuel Thompson, continued to occupy a part of the farm, including said Lucy's share.    Since his decease, his son, Samuel Thompson, the defendant, has owned and occupied most of the farm, and occupied said Lucy's share until within a few years.

The John Thompson farm was situated partly in Swanzey and partly in Richmond, and Lucy's share was set off in two pieces, one in each of said towns.    In December, 1856, E. F. Lane entered on the premises with a surveyor, and run out some of the lines, claiming the same under his deed, and subsequently, while negotiating for their sale with the plaintiff, went with him upon the premises to examine the timber growing thereon.

The plaintiff having closed his case, the defendant moved for a non-suit ;—

1. Because it appears by the evidence that the plaintiff is, at most, entitled to a reversionary interest, Robert Holinbeck, Jr., being entitled to an estate for life, as tenant by the curtesy ;—

2. Because the plaintiff shows no title derived from Lucy Holbrook, and his deed from Austin Holbrook contains no sufficient description of the close in question.    His deed was a quitclaim of

all the land in Swanzey and Richmond formerly owned by Samuel Thompson. No evidence shows the premises ever to have been owned by Samuel Thompson, and no title is derived from him. And the other clause of the deed—" all my right by inheritance to any part of said farm in common or divided, and set off to my ancestor, and now occupied by Samuel Thompson "—does not aid the description, since Lucy Thompson was no ancestor of his. The motion was overruled, and the defendant excepted.

The defendant offered evidence that, on the 15th day of February, 1859 (which was subsequent to the commencement of said action), an administrator was appointed upon the estate of Lucy Holbrook, by the court of probate for the county of Cheshire, and that, on the first of March, 1859, upon the representation of the administrator, said estate was decreed to be administered as an insolvent estate ; which evidence the court rejected—to which ruling the defendant excepted.

The jury having returned a verdict for the plaintiff, the defendant moved that the same be set aside, and for a new trial, by reason of said rulings and exceptions. And the questions arising in the case were transferred to the law term for decision.

*Wheeler & Faulkner*, for the defendant.

*Lane*, for the plaintiff.

SARGENT, J. Leaving out of view for the present the questions raised by the appointment of an administrator upon the estate of Lucy Holbrook, and the decree of insolvency in said estate, we find, from the facts stated in the case, that, at the time the acts complained of as trespasses were committed, Robert Holinbeck, Jr., had a life estate in the land, and the plaintiff had only the reversionary interest of Austin Holbrook, which fell to him on the death of his half sister, Belinda (Mrs. Holinbeck), without children then living, or any heirs in the descending line, or father or mother living ; under which circumstances her title to the reversion passed to her only brother of the half blood (Austin Holbrook), whose title the plaintiff now has.

But he can not maintain trespass *quare clausum*, during the continuance of the life estate of Holinbeck. To maintain this action, the plaintiff's possession must have been disturbed, or he must have had the right to enter immediately at the time of the act. But the plaintiff can have no possession, nor has he the right to possession, during the continuance of the life estate.

" Because a right of entry in the remainderman can not exist during the existence of a particular estate ; and the laches of a tenant for life will not affect the party entitled. An entry to avoid the statute (of limitations), must be an entry for the purpose of taking possession ; and such an entry can not be made during the existence of the life estate." *Jackson* v. *Schoonmaker*, 4 Johns. 402.

So where there is a right to curtesy in land descended, no right

of entry descends to or can vest in the heir during the continuance of that estate. *Jackson* v. *Sellick*, 8 Johns. 269.

A reversioner may bring an action on the case, in the nature of waste, against a stranger for plowing up his ground and carrying away the turf thus obtained. *Randall* v. *Cleveland*, 6 Conn. 328. And the reason there given is, that, "unlike a bare wrongful entry on land, or mere outrage on the possession of the tenant, for which he might be compensated in an action of trespass, these are permanent injuries, and entitle the reversioner to damages. And these damages he is not bound to recover from the tenant, but may have his action against the wrong-doer himself." And the same doctrine is held in *Elliott* v. *Smith*, 2 N. H. 430.

For acts which merely affect injuriously the possession of the land, a reversioner can maintain no action; but for any act which is a permanent injury to the estate, the reversioner may maintain an action on the case, but not trespass. 1 Hill. Real Estate 552, 553; 4 Kent Com. 119; *Anderson* v. *Nesmith*, 7 N. H. 167. And in the last case cited it is said that, during the time the lessee for years is in possession the lessor has no right of entry; and he is liable for trespasses on the land, in the same manner as any other person.

So that, although this plaintiff might have maintained case for an injury to the reversion in cutting the trees, yet he can not bring trespass *quare clausum*.

But can the reversioner in this case maintain trespass *de bonis asportatis* for taking, carrying away, and converting the plaintiff's sapling pines? In this count no injury is alleged of any kind to the real estate, either in possession or remainder. No mention is made of where the trees were cut or where they grew. After the trees were severed from the land they became personal property; and it is for taking and carrying away these trees, thus severed, that the plaintiff seeks in this count to recover; and, upon the authorities, he may may maintain this count.

In *Elliott* v. *Smith*, before cited, it is stated as a principle well established, that even where trees are cut by the tenant or by a third person by consent of the tenant, when not cut for necessary fire wood, fences, or other purposes for which the tenant has a right to cut and use the wood and timber, in such cases the title to the trees thus cut, still in all cases remains in the reversioner.

In *Ward* v. *Andrews*, 2 Chitty 636, the landlord of a tenant from year to year, where there was no reservation of the timber on the premises, brought trespass against a third person. The first count in the declaration was for entering the plaintiff's close, cutting down and carrying away timber; the second count for cutting down and carrying away timber, generally; and the third count for carrying away timber. Plea, not guilty; and a verdict for the plaintiff, subject to the opinion of the court as to whether trespass *vi et armis* could be maintained. And the court held that upon the last counts the plaintiff was entitled to recover.

For it is held in case of personal property that the general property draws to it the possession; that the possession in law follows the legal ownership, so that the owner of a chattel may support

trespass though he has never been in actual possession. 1 Chit. Pl. 169, 176; *Anderson* v. *Nesmith, ante ;* 5 Bac, Ab. 166; *Plummer* v. *Plummer,* 30 N. H. 568.

For cutting the trees by a third person the tenant may maintain trespass for the disturbance of his actual possession, and the reversioner may maintain case for the injury to the reversion; but where the trees are once cut and severed, the tenant ceases to have any interest in or right to the trees, and they then become the absolute property of the reversioner; and this absolute ownership draws after it and with it the legal possession, so that he can maintain trespass for carrying them away and converting them. And even if the tenant himself had carried them away after they were cut, the reversioner could maintain trespass against him for such carrying away. 1 Chit. Pl. 179.

We think the deed may be properly construed, so as to pass the reversionary interest of Austin Holbrook, without any violation of the well established principles of construction.

For the purpose of applying the instrument to the facts, and determining what passes by it, or who take an interest under it, proof is admissible of every material fact that will aid the court to identify the person or thing mentioned in the instrument, and place the court, whose province it is to declare the meaning of the words of the instrument, as near as may be in the situation of the parties to it. *Shore* v. *Wilson,* 5 Scott N. R. 958; *Goodhue* v. *Clark,* 37 N. H. 533, and cases cited. *Tenney* v. *East Warren Lumber Co.,* 43 N. H. 343.

In the description in a deed, if the premises intended to be granted appear clearly and satisfactorily from any part of the description, and other circumstances of description are mentioned which are not applicable to such premises, the grant will not be defeated, but those circumstances will be rejected as false or mistaken; and the deed is to be so construed as to give effect, if possible, to the intention of the parties. *Johnson* v. *Simpson,* 36 N. H. 91, and cases cited.

Assuming the position of the parties then when they made the deed, and knowing what they knew and what is here disclosed as to the title of the grantor, and the situation and occupancy of the land, and leaving out what is mistaken in the description, and what is wrongly described, the deed conveys all the grantor's "right, title and interest in and to the farm situate partly in Swanzey, and partly in Richmond." Also all his "right by inheritance, of any part of said farm in common or divided, and now occupied by Samuel Thompson;" in other words, all his right by inheritance, to any part of the farm situate partly in Swanzey, and partly in Richmond, in common or divided, now occupied by Samuel Thompson. There being sufficient to convey the land in the description, and there being no doubt as to the intention of the parties, the title passes, and especially when the parts that are wrong are so evidently mistaken; the first, from the fact that the first Samuel Thompson, until his decease, occupied instead of owned this farm; and the second, from the circumstance of his not reflecting, as many men of fair, ordinary business habits and capacity, might not, in

making a deed of land, that his father's wife, though his own step-mother, might not be ancestor to the grantor. But it is not necessary to account for the mistakes that were made, since the grantor has inserted enough to convey what all can see he intended to convey.

How does the appointment of an administrator and the decree of insolvency in the estate of Lucy Holbrook affect the case?

Upon the death of a testator, even before probate of the will, the legal title to all personal estate of the deceased becomes vested in the person named as executor, as trustee for the legatees, creditors, and others under the will, and he is the only legal representative of the estate disposed of by the will. *Shirley* v. *Healds,* 34 N. H. 407, and cases cited.

So in case of an administrator. When appointed, his authority extends back by relation, so far as the personal property is concerned, for certain purposes, to the time of the death of the intestate. But here, the trees standing on the land at the time of the decease of the intestate, were no part of the personal estate. They then constituted a part of the realty, and must be governed by the laws that govern real estate. Generally, when an estate is administered as insolvent, the administrator is at once appointed, and the decree of insolvency is passed soon after the decease of the intestate. And the result is, practically, that in such cases the heir never comes in possession of any of the property either real or personal. *Goodwin* v. *Milton,* 25 N. H. 458.

Yet when there is no decree of insolvency, and no administrator appointed for more than twenty years after the decease of the intestate, and there is real estate belonging to his estate, as in this case, some body must have the right of possession of the land. The fact that there was a tenant for life here, would not affect the principle. The administrator could not have possession or the right to the possession, for there was no administrator; and if there had been, he had no interest whatever in the land until the decree of insolvency, or any right of entry or of possession.

We think that it must be held in this case, that the real estate of Lucy Holbrook, at her decease, vested immediately in her legal heirs, subject to her husband's life estate, liable to be divested by a sale by the administrator, in case the personal property should prove to be insufficient to pay the debts; and liable, also, to be suspended by a decree of insolvency. Before such a decree (in case there was no life estate), the heirs alone could maintain any action in regard to the real estate; the administrator as such had no duties or rights connected therewith. After such decree, and by virtue of it and the provisions of the statute relating thereto, the administrator acquired a special and limited interest, during the continuance of which, no action could be maintained by the heirs in relation to the real estate; but all such actions must then be brought by the administrator.

Until the decree of insolvency, the heirs are to be considered as in the rightful possession of the premises. After the decree the administrator is entitled to the possession; his title commences at the date of the decree. The position that the title of the adminis-

trator to the real estate relates back from the decree of insolvency, to the death of the intestate, twenty-three years in this case, would hardly seem to be reasonable, nor is it sustained by the authorities. Rev. Stat., ch. 159, sec. 10; Comp. Laws, 407; Rev. Stat., ch. 161, sec. 19; Comp. Laws, 411; Rev. Stat., ch. 164, sec. 1; Comp. Laws, 417; *Brackett* v. *Tillotson*, 4 N. H. 208; *Bean* v. *Moulton*, 5 N. H. 450; *Bergin* v. *McFarland*, 26 N. H. 533; *Gregg* v. *Currier*, 36 N. H. 200; *Gibson* v. *Farley*, 16 Mass. 280; *Sparhawk* v. *Allen*, 25 N. H. 266; *Drinkwater* v. *Drinkwater*, 4 Mass. 358.

In this case, the heir, having an interest in the reversion, might bring an action on the case for any permanent injury, as for the cutting of the trees, &c.; and although he could not bring trespass *quare clausum*, because of the possession of the tenant for life; yet, when the trees were severed and became personal property, the interest in them vested in the heir, as there was then no administrator, or any decree of insolvency. Whether the administrator could in such case recover in some way what the heir thus obtains, to pay the debts of the estate, it is not important here to consider.

But the plea in this case is the general issue; and, under that plea it may be doubtful whether this evidence of the appointment of the administrator with a decree of insolvency would be competent evidence, upon the authority of *Bergin* y. *McFarland*, 26 N. H. 539.

There must be

*Judgment on the verdict.*