REED v. HATCH. { March 11, 1875.

A conveyed to B a piece of land on which a saw-mill was standing, and a right of flowage of A's adjoining land. Following the *habendum* clause in the deed were the usual covenants in the ordinary form of warranty deeds. These were printed. After the covenants was inserted the following, in writing: " provided said mill is kept for manufacture of lumber, or as long as it is kept for said use." After the last word in the printed covenants was a printed period. The next word, "provided," began with a small p, and not with a capital. *Held*, that the proviso in the deed applied to the grant, and was not restricted to the covenant of warranty.

The mill was destroyed by fire. After the lapse of a year the grantor requested the grantee to erect a new mill on the premises, which the grantee neglected to do. After a reasonable time for such erection, the grantor brought a writ of entry to recover the premises. *Held*, that the

erection within a reasonable time, and the maintenance of another mill similar to the mill destroyed, would have been a compliance with the terms of the condition or proviso in the deed; but the failure to erect and maintain such mill entitles the grantor to maintain his writ of entry.

WRIT OF ENTRY, to recover a tract of land situate in Washington, in said county. Plea, *nul disseizin.* Trial before SMITH, J.

The plaintiff showed title under a deed from Sally R. Fisher to himself, dated Feb. 15, 1865. He also put in evidence a warranty deed from himself to William Atkins, dated June 9, 1870, recorded June 28, 1870, expressed to be in consideration of one hundred dollars. The description of the premises conveyed is as follows: "A certain tract or parcel of land lying in said Washington, with the buildings thereon, and bounded and described as follows, to wit,—commencing at a stake and stones twenty feet below the saw-mill now standing on said land; thence south-east about fourteen rods to a stake and stones; thence easterly about ten rods to a swamp; thence northerly about twelve rods to the mill-pond; thence across said mill-pond to a stake and stones on the west side; thence westerly about twelve rods to a stake and stones; thence southerly about eight rods to the bound first mentioned, containing three acres more or less;—also, the right to flow as much of George D. Reed's land as will flow by raising the dam fourteen feet from the bottom of the wheel-pit as it now stands. The said George D. Reed reserves the right to pass and repass to his large meadow across said land; also, the right to maintain and keep in repair a bridge between the mill and the dam."

Following the *habendum* clause are the usual covenants of warranty, in print, and after the covenants is the following, in writing: "provided said mill is kept for manufacture of lumber, or as long as it is kept for said use." After the last word in the printed covenants of warranty, in the office copy of said deed, is a printed period. The next word, "provided," commences with a small p, and not with a capital. It was admitted that the mill was burned in August, 1871; that after the lapse of one year the defendant was notified by the plaintiff to erect a new mill on the premises, which the defendant has not done; and that he had a reasonable time so to do before the commencement of this suit.

The plaintiff testified as follows: "Atkins was a millwright; I wanted a mill there so that I could get my lumber sawed easy; I deeded him the three acres and small water privilege on it *(locus in quo).* The consideration was, that he should maintain a mill there, and saw my lumber on it at a reasonable price; there was no other consideration for the deed; I received no money; a saw-mill was built there by Atkins; he furnished the labor; I gave him the lumber for the mill and dam, from another piece of land; after the saw-mill was built I had my lumber sawed there, which I gave him credit for, and supposed he charged to me." To the admission of the foregoing testimony the defendant excepted, but the court *pro forma* admitted the same.

The court *pro forma* ordered a verdict for the plaintiff for the demanded premises, and the defendant excepted.

The questions arising upon the foregoing case were reserved.

*Wait* (with whom was *Scott*), for the defendant.

The description of the premises is, "a certain tract or parcel of land," &c., "bounded and described as follows, to wit, commencing at a stake and stones twenty feet below the saw-mill now standing on said land," &c.; then follows the *habendum* in the usual form, making a full stop, marked by a period. Then the several covenants,—"And we, the said George D. Reed and Jennie A. Reed, and our heirs," &c., "do hereby covenant," &c., "that we and our heirs," &c., "shall and will warrant and defend the same to the said William Atkins and his heirs and assigns against the lawful claims and demands of any person or persons whomsoever. provided said mill is kept for manufacture of lumber, or so long as it is kept for said use."

Not only the face of this deed shows it to have been the intention of the parties to confine the operation of this provision respecting the saw-mill to the covenants of warranty, but every recognized rule of interpretation requires it to be so confined. Relative words are to be referred to the next antecedent where the intent does not appear to the contrary. *Osgood* v. *Hutchins*, 6 N. H. 374;—see, also, *Shaw* v. *Shaw*, 43 N. H. 170, and *Bank* v. *Woodward*, 5 N. H. 104. This rule is by no means an arbitrary rule of interpretation, but is one founded upon the common and well-known use of language; and the parties are to be taken to mean what their language, according to its ordinary use, imports. It would be contrary, not only to the ordinary use of language, but also in direct opposition to this well settled rule of interpretation, to construe this provision as applying to the terms of the grant, or to any other part of the deed than the covenants of warranty, which are the next antecedent.

The deed is clear in itself; but if the language were doubtful, and susceptible of two meanings, it is to be construed most strongly against the grantor, which will also require these words to be understood as applying to the covenants of warranty only, and not to the terms of the grant. Bacon's Maxims, Regula 3; 2 Kent's Com. *557, note a; *Tenny* v. *Beard*, 5 N. H. 58; *Cocheco Man. Co.* v. *Whittier*, 10 N. H. 305; *Emerson* v. *White*, 29 N. H. 498, BELL, J.; *Bullen* v. *Runnels*, 2 N. H. 258, WOODBURY, J., and authorities there cited. The language of the deed in question is, "and that we and our heirs," &c., "shall and will warrant," &c., "provided said mill is kept," &c., "or so long as it is kept for said use:" not, provided *a* mill is kept, nor as long as *such a* mill is kept. The words "said" and "it" were evidently intended to apply to the saw-mill mentioned in the description of the premises, where alone it is before mentioned in the deed. Now, even if these words can be regarded as constituting a condition affecting the grant, which they cannot, it is a condition subsequent, and by the burning of

the mill has become impossible to be complied with. If a condition subsequent be possible at the time of making it, and becomes afterwards impossible to be complied with, either by the act of God, or of the law, or of the grantor, the estate of the grantee being once vested is not divested, but becomes absolute. 4 Kent's Com. *129, *130; 2 Black. Com. 156; Co. Lit. 206 a. Had the defendant erected another saw-mill upon the premises in place of the one which was burned, it would have been no compliance with this provision. It would not have been " said mill."

The obvious reference of these words to the mill standing upon the premises at the time, and to no other, not only brings them within this last mentioned rule of law, but renders it clear that the parties intended them to apply only to the covenants of warranty, and not to the grant itself.

We do not think that the mere circumstance that a printed period does not, by the registry, appear to have been erased, can take this deed out of the ordinary rules of construction, when the language itself and the obvious meaning of the parties are both within them. What principle of law or what authority can be invoked in support of the *pro forma* ruling admitting the parol evidence as shown by the case, we are at a loss to imagine; for, besides the elementary rule that parol evidence is incompetent to explain a written instrument, it is equally well settled that "a deed will take effect according to the meaning of its terms, and not according to the erroneous impression of the parties." *Webster* v. *Atkinson,* 4 N. H. 21; *Furbush* v. *Goodwin,* 25 N. H. 425, 456;—see, also, upon this point, *Haven* v. *Cram,* 1 N. H. 93; *Bean* v. *Thompson,* 19 N. H. 290; *Harvey* v. *Mitchell,* 31 N. H. 575. This is no latent ambiguity to be explained by extrinsic evidence, but everything is patent upon the face of the deed. Ambiguity at all it is not, but, as we submit, the language of the deed can be construed no otherwise than as above suggested.

*Burke* (with whom was *Bowers*), for the plaintiff.

I. The parol testimony of the plaintiff, to show the real and true consideration of the deed from him to William Atkins, under whom the defendant claims, was proper. It was not offered for the purpose of defeating the conveyance; and for every other purpose it was admissible. *Morse* v. *Shattuck,* 4 N. H. 229; *Pritchard* v. *Brown,* 4 N. H. 397; *Buffum* v. *Green,* 5 N. H. 82; *Nutting* v. *Herbert,* 35 N. H. 120; *Pomeroy* v. *Bailey,* 43 N. H. 118.

In consulting a description of property granted or devised in a deed or will, the facts of the case are to be first ascertained, that the instrument may be interpreted according to the actual facts which were before the grantor or devisor, because in this way their intention and meaning may thus be readily and satisfactorily ascertained. *Bell* v. *Woodward,* 46 N. H. 331.

II. The proviso or condition in the deed from the plaintiff to Atkins

applies to the grant and not to the covenants. It is the manifest intention of the parties to that deed, that the grantee should hold the land as long as he maintained a saw-mill on the premises granted. That was the actual consideration of the deed. The idea seems to be preposterous that Atkins should hold the land and a right of flowage after he ceased to maintain the mill. This construction would give him the land and the right of flowage if the mill had been destroyed the next day after the deed was given.

The parties could have had no such understanding as this, and therefore could not have contemplated that the proviso related to the covenants only, and not to the grant.

The first and most obvious rule in the construction of a legal instrument is, that it should be construed, if possible, so as to effectuate the real intention of the parties. And to that end all its parts are to be taken into consideration. This proposition requires no authority in its support, but abundance of it exists. The whole language of the deed is to be taken together, and effect, if possible, is to be given to every part. *Bell* v. *Woodward, supra.*

And this doctrine is maintained by the authorities cited by the defendant. Relative words are to yield to the real intent of the grantor. *Osgood* v. *Hutchins,* 6 N. H. 382.

*Wait,* in reply.

It will be observed that the question here is between the parties to the conveyance, or between the grantor and the defendant holding under the grantee, which is in law the same thing. The case of *Pritchard* v. *Brown,* 4 N. H. 397, cited for the plaintiff, holds that parol evidence is competent to show a resulting trust to a third person. But it is very expressly settled by the cases of *Graves* v. *Graves,* 29 N. H. 129, and *Farrington* v. *Barr,* 36 N. H. 86, on very full consideration, that such evidence is not admissible to raise such a trust in favor of the grantor. So *Pritchard* v. *Brown* has no application to the case at bar. *Buffum* v. *Green,* 5 N. H. 71, 82, and *Pomeroy* v. *Bailey,* 43 N. H. 118, also cited for the plaintiff, were cases arising between the grantee and creditors of the grantor, and the evidence was offered to rebut an inference of fraud, raised by evidence, shown by the other side. They present questions wholly foreign to that now before the court.

But a very elementary distinction upon this subject is, that the rule which excludes extrinsic evidence when offered to explain or qualify the terms of a deed, applies only between the parties to the instrument or those claiming under them, and does not operate against strangers. 1 Gr. Ev., sec. 279 ; 2 Pars. on Con. 556, 557, and authorities cited. All the cases above mentioned, cited for the plaintiff, are cases where the rights of third persons were in question, and are thus inapplicable to the present question. *Morse* v. *Shattuck,* 4 N. H. 229, and *Nutting* v. *Herbert,* 35 N. H. 120, cited also for the plaintiff, hold, and only hold, that the rule of damages in an action for breach of the covenant of seizin

being the amount paid for the land, that may be shown in order to ascertain the amount of the damage for such breach. The evidence was offered to show how much the grantee had suffered by a breach of the covenant, and not to qualify the terms of a deed or to affect its operation.

The evidence in the case at bar, if offered for any assignable purpose, was for that of giving an effect to the language of the deed, which, without such evidence, it would not have; or, in other words, to enable the court to see a meaning in the language which by itself that language does not bear. If not thus within the rule which excludes parol or extrinsic evidence to vary the effect of a deed, it would, as I conceive, be difficult to discover what is.

But this evidence is really offered for the purpose of fixing such a construction upon the deed as to defeat its operation.

The deed purports to convey this property to the defendant, and to covenant that the grantor shall defend the title so long as a certain mill, then on the premises, shall be kept for the manufacture of lumber. But the plaintiff proposes, by this evidence, to reduce this instrument to a conditional deed, in order that the law may restore the land to him. If this is not to defeat the deed, what, in law, I desire to ask, is?

True, in *Buffum* v. *Graves*, the chief justice observes : " But it has been settled in this court that for any other purpose [but that of defeating the operation of the deed] he may show the true consideration." I presume he here alludes, though he does not cite it, to the case of *Scoby* v. *Blanchard*, 3 N. H. 170, where evidence was received to raise a resulting trust in favor of a third person. Similar remarks may be found in other cases, and often, doubtless, in the text-books of approved authors. But they are to be understood as made with reference to such evidence when offered for a competent purpose. It does not follow that because the true consideration may be shown for all competent purposes, it may therefore be shown for the purpose of changing the effect of language, or for any other incompetent purpose. The cases of *Graves* v. *Graves* and *Farrington* v. *Barr*, above cited, are direct to the point that a want of consideration cannot be shown for the purpose of raising a resulting trust in favor of the grantor, although the source of the consideration may be thus shown in order to raise such a trust in favor of a third person.

In the observation cited for the plaintiff from *Bell* v. *Woodward*, 46 N. H. 331, the court were discussing a case of a latent ambiguity, which is all that need be said of that case in its application to the present question.

If it is claimed for the plaintiff that the consideration of a deed may be extrinsically shown for the purpose of explaining its language or giving it a construction, we submit, with entire confidence, that the proposition is warranted by neither authority nor reason.

But there is another view of this case, which, as I conceive, is equally conclusive against the competency of this evidence. This defendant is an innocent purchaser without notice of these extrinsic facts. The

deed shows a consideration of one hundred dollars paid, and he cannot be affected by anything *dehors* the deed.

But if this evidence is competent, and is in any way material to the plaintiff's case, as his counsel claims, this verdict cannot be maintained, and for the very obvious reason that it raises a question of fact for the jury, and not a question of law for the court. The verdict having been directed by the court, there can be no pretence for sustaining it, but a new trial should be ordered in order that the evidence may be submitted to a jury.

Now the whole structure of this deed, taken together, shows that the intention of the parties was as we claim the deed to mean. Had they intended this proviso or condition to apply to and qualify the grant, the obviously appropriate place to have inserted it was, even to an untrained and uneducated mind, in the blank space after the description of the premises, where there was ample room. Instead of this, however, they take especial pains to interline it into that part of the printed blank where the covenant of warranty may occur as the nearest antecedent, making it, by commencing with a small letter, to appear especially as a part of the sentence constituting that particular covenant, and with no word anywhere to show that it was not to be so read. Another significant feature of this instrument is, that it contains reservations to the grantor of the right to pass and repass, &c., and the right to maintain and keep in repair a bridge, &c. Now these reservations appear in the instrument at the usual place, and there was plenty of space left for the provision in question. It was not put with these other qualifying provisions, but the parties were at some pains to place it in a different connection, and where it could only be read as a part of, and go to qualify, the covenant of warranty.

Undoubtedly, "relative words are to yield to the real intent of the grantor." But where is there a word in this deed which shows any intent that this provision should not be construed precisely in accordance with its grammatical import? We submit that it is not to be found. A very clear example of the application of this last rule is to be found in the case of *Doe* v. *Dodd,* 5 B. & Adol. 689. There A devised to B, his executors and administrators, for the term of his natural life, and the lease contained a covenant by A for quiet enjoyment of the premises by B, his executors, &c., during the natural life of A. And it was held, that although had the demise been by A to B for the term of his natural life simply, it would have been a demise for the life of B, his name appearing as the nearest antecedent to the relative his; yet as the demise was to B, his executors and administrators, and as there was a covenant for quiet enjoyment by B, his executors and administrators, there was sufficient in the instrument to show that the lease was to continue beyond the life of B, and that consequently it was for the life of A.

But in the deed in question, so far from there being any words to show an intent that this proviso should be referred to a distant antecedent not standing in connection with it, the deed itself, taken alto-

gether, shows that the intent was in accordance with the language understood according to its ordinary grammatical construction. Indeed, the counsel for the plaintiff finds no way to raise an inference of any other intent but by parol and extrinsic evidence,—which, consisting solely of the testimony of the plaintiff himself in the absence of his grantee, is liable to suspicion enough, even were it competent to be submitted to a jury.

It is said that " the idea seems to be preposterous that Atkins should hold the land and the right of flowage after he ceased to maintain the mill." The question is, not what the court may think would be reasonable between the parties, but what does their language import? Now the court have no means of knowing the amount or value of the land to be flowed, and there is nothing to afford an inference that it was a matter of any substantial importance at all to the plaintiff. Indeed, the language of this deed rather authorizes the inference that the flowage was of substantially no consequence, and that the instrument was framed with a view to that fact. The land being of no value, and the parties considering, what is very obvious, that if no mill was maintained there would in reality be no flowage, the grantor might, in addition to the other considerations received, have regarded it as sufficient that a saw-mill should be erected, he taking the risk, so far as his own interests were concerned, of any casualty by which it might be destroyed; in which case he was to remain under no further obligation to defend the title. The court cannot say that there is not some cloud upon the title to this property, which the parties had in view. The manner in which this deed is framed renders it altogether probable that such is the case; and hence the plaintiff obligated himself to defend the title no longer than " said mill " should be kept as provided.

These suggestions are not only as reasonable as the view presented by the counsel for the plaintiff in order to induce the court to travel out of the deed and contort its language in order to make it by construction what the parties have not made it for themselves, but we conceive that they are entirely conclusive against any such method of construction. What would be reasonable between the parties depends upon the peculiar circumstances of each particular case, and which the court can never know. The parties are presumed to make their contracts with reference to what they know of their own interests and situation, but which they seldom disclose. Mr. Justice KENT, in *Goix* v. *Low*, 1 Johns. Cas. 343, observes,—" But in the construction of written contracts, we are to presume that the attention of the parties has been alive and active through the whole instrument, and that no averments are anywhere inserted without meaning and without use."

And we submit that every deed is to be presumed to be framed by the parties, in all its parts, while alive and awake to every interest upon which it bears. Nothing could be more dangerous than for the court to undertake to give constructions to deeds on some supposed idea of their reasonableness between the parties, unless, indeed, the whole rule which excludes extrinsic evidence for their explanation,

hitherto esteemed so vitally important to safe results, is to be broken down and abolished. Any such doctrine would make jurisprudence a sham, and every litigation a farce. The only safe rule is to adhere to the language of the parties, in which they have deliberately chosen to solemnize their acts.

\* FOSTER, C. J., C. C. We are called upon to give an interpretation to the deed from the plaintiff to William Atkins, under whom the defendant claims title. It is written upon one of the blanks in the common form adopted for deeds of warranty. It contains a description of the land conveyed, containing a saw-mill located thereon. It also grants a right of flowage; and all this is followed by the *habendum* clause, then by the usual covenants of ownership, seizin in fee and possession by the grantor, freedom from incumbrances, and general warranty.

Immediately following these covenants is inserted in writing a condition or proviso in these words (beginning with a small p): " provided said mill is kept for the manufacture of lumber, or so long as it is kept for said use." The contention between these parties is as to whether this proviso applies to the grant, or only to the covenant of warranty,—the plaintiff claiming the former and the defendant the latter construction to be correct; and the question involves the consideration of the admissibility of parol extrinsic evidence in aid of the interpretation of the deed.

The same general rules apply to the construction of deeds and wills,— the object being to ascertain, if possible, the intention of the grantor or devisor, and then to give that intention effect. If the intention may be ascertained from the deed or will itself, it is unnecessary to consider anything outside the instrument. The condition or proviso here is not to be interpreted as an isolated, detached, and independent provision; but the intention of the parties to the deed is to be " ascertained from a full view of everything contained within the four corners of the instrument." *Perkins* v. *Mathes*, 49 N. H. 107, 110; *Richardson* v. *Palmer*, 38 N. H. 212, 218, and cases cited; *Bell* v. *Woodward*, 46 N. H. 331, 332. The deed must undoubtedly have effect, according to the meaning of its terms, and not according to any erroneous impressions of the parties. *Furbush* v. *Goodwin*, 25 N. H. 425.

The court is to place itself, as near as may be, in the situation of the parties ; and if that situation can be apprehended without reference to extrinsic evidence, so much the better. See *Lane* v. *Thompson*, 43 N. H. 324.

Confining myself, then, to the consideration of that which is apparent upon the face of the deed, the defendant's construction of it seems to me to be forced and unnatural. He does not apply the proviso to the grant, nor to all the covenants, but confines its operation to the covenant of warranty alone.

---

\* SMITH, J., having tried the cause, did not sit.

Now, when a grantor has covenanted that he is the owner, seized and possessed in fee of the premises, and that he has good right to convey them, and that they are free and clear from all incumbrances, the additional covenant of warranty seems to be in reality superfluous. It is implied and comprehended in the preceding covenants.

It has "been urged," said Mr. Rawle, "that the modern covenant of warranty [for it is unknown in English conveyancing—Rawle on Covenants.for Title, 4th ed., 206] should do more than protect against 'the consequences incident upon a defective title,' and should, at least to some extent, comprise within itself the virtues of all the covenants for title; yet, in the absence of peculiar local construction, * * such a construction is generally denied, and the covenant of warranty is held to be simply a covenant for quiet enjoyment." Rawle on Covenants for Title 213; 3 Washb. R. P. 399. And "covenants for quiet enjoyment, in themselves, are said to be as effectual by way of estoppel as words of conveyance." Bigelow on Estoppel 349.

Moreover, "it seems to have been long settled that in conveyances in fee simple, containing the words give, grant, &c., a covenant of warranty is implied in the word give." PARKER, C. J., in *Crouch* v. *Fowle*, 9 N. H. 222; *Brown* v. *Tomlinson*, 2 Greene (Iowa) 525; 3 Washb. R. P. 413.

If, then, the covenant of warranty imports nothing more than is implied in the terms of the granting clause, or in the covenants of title, seizin, and freedom from incumbrances, it seems to follow that the condition cannot be restricted in its operation to this meaningless and superfluous covenant, but must be applied to whatever is comprehended in the only effectual parts of the deed; in short, to *the grant*—the recital by the grantor of his gift, grant, bargain, and sale. The deed is a gift, grant, bargain, and sale of the premises, provided the sawmill thereon "is kept for the manufacture of lumber, or so long as it is kept for said use."

In this view the defendant's construction of the condition is absurd. The grantor has conveyed the premises by terms which, independent of the special covenant of warranty, imply such a warranty, in terms which operate as an estoppel upon him to say that he has not warranted and will not defend the title; and yet, being thus estopped, he adds the contradictory, irreconcilable, and ineffectual clause, in substance,—" I will expressly warrant the title which I have conveyed in terms implying a warranty, on condition that you keep up a saw-mill on the premises"—affixing the condition to the meaningless and superfluous part of the deed.

So much, I observe, with regard to the purely legal interpretation of the deed, and without reference to the apparent intention of the parties.

But I fail to see how any intention at variance with this construction can be gathered from an inspection of the whole deed.

The grantor conveys a small parcel of land containing little more territory than would seem to be requisite for the convenient enjoyment

and use of the saw-mill standing upon it.   He also conveys a right
of flowage, incident and appurtenant to the use of the saw-mill,—
useless without the saw-mill.   It is perfectly evident that the grant
contemplated by both parties the maintenance of a saw-mill upon the
premises granted.   The court can see, without any extrinsic evidence,
that the maintenance of a saw-mill upon premises contiguous to the re-
maining property of the grantor, and for his manifest convenience,
might have been an inducement to the sale of this land and of the right
of flowage ; and the court fail to discover any intention that the gran-
tee, by restricting the condition to the covenant of warranty, should
hold the land and the right of flowage after he had ceased to maintain
the mill, without which the right of flowage would be useless, and the
land not apparently of any essential use or value.

I have reached this result without reference, in my own mind, to the
extrinsic evidence, the admissibility of which is questioned, thereby
avoiding the consideration of the defendant's exception in that respect—
which, I may add, however, does not seem to me available.   Proof is
ordinarily admissible of every material fact that will help to identify
not only the person or thing intended, but of anything which will en-
able the court to comprehend the position of the parties.

With regard to the defendant's position, that, assuming the condition
to apply to the grant and not to the special covenant, the estate is now
made absolute in the grantee, because the condition, being a condition
subsequent, has since the making of it become impossible of perform-
ance through the act of God, or by means without the fault of the
grantee, it must be observed that an accidental destruction of property
by fire, communicated by the negligence or design of man, is not, in a
legal sense, the act of God.

Where the law casts a *duty* on a party, he is excused from its per-
formance if it be rendered impossible by the act of God, which is
properly definable as an accident arising from a cause which operates
without interference or aid from man—*Forward* v. *Pittard*, 1 D. & E.
27, 1 Pars. on Con. 635 ; but where a party *contracts* to do a thing, his
non-performance of the act, unless he has by the terms of his contract
provided against contingencies and responsibilities, is not excused by
an inevitable accident or other casualty, although not foreseen nor
within the party's control.   1 Bouv. Inst. 1024.

The acceptance of the plaintiff's deed in this case, containing the
provision that the grantee should maintain and keep the mill upon the
premises conveyed, for the manufacture of lumber, was an agreement
on the part of the defendant, the non-performance of which could not
be excused by the accident of its destruction ; but, nevertheless, his
duty would be discharged, and the proviso would not operate to destroy
the plaintiff's grant and give him a right of entry, if within a reasonable
time the defendant had rebuilt the mill.   *Bullock* v. *Dommitt*, 6 D. &
E. 650.   In aid of this construction, we have the manifest intention
and understanding of the parties, evidenced by the plaintiff's notice
calling on the defendant to rebuild.   If the defendant had complied

with that notice, it is manifest the plaintiff would have been estopped to deny the performance of the condition upon which the grant was established.

My opinion is that there should be judgment on the verdict.

CUSHING, C. J.  The proviso is separated from the preceding part of the deed by a printed period, but it is not in a separate paragraph, and it commences with a small p instead of a capital; and I infer, from what is said in the case, that, the deed being written upon a common blank, the proviso had to be partially interlined, which perhaps accounts for the peculiarity of its position.

It appears to me that the proviso naturally applies to what has gone before.  I suppose, from the stress which is laid upon the small p, that the parties think that a matter of some importance; but it does not seem so to me, and I do not see anything in that which appears to me to alter what I think is the natural construction of the proviso.

Neither, if we suppose that this conveyancer, whose mechanical skill was so small, was master of all the learning on the subject of implied covenants, is it apparent to me what object he could have which would induce him to substitute for the covenant of warranty implied in the word " give," the express covenant with the qualifying condition.  I am therefore of opinion that the proviso must be held to apply to the whole preceding deed.  It is also said that the condition has become impossible by the act of God; but I do not understand that the accidental burning of the mill can be considered to be an event so entirely beyond human control as to be properly described as an act of God.  If, therefore, the condition had really become impossible by this accidental burning of the mill, the effect would be to give the plaintiff a right of entry.

In this case, however, it appears that the plaintiff requested the defendant to rebuild the mill, so that, had the defendant complied within a reasonable time, the plaintiff must have been held to have waived his extreme rights, and to be estopped to deny that the condition had been performed.

LADD, J.  I agree that the exceptions must be overruled.  I see no legal reason why one may not grant an estate determinable upon such a contingency as the destruction, in any way, of the buildings which exist upon the premises at the time of the grant.  The estate conveyed would be simply a base or qualified fee.

*Judgment on the verdict.*