Coös,
Jan. 5, 1926.

### COREY A. GODDARD v. BERLIN MILLS COMPANY.

### SAME v. THE BROWN COMPANY.

In an action for damages claimed to have been caused the plaintiff's land by flowage due to the holding back of water by the defendant's dam in times of heavy floods, it cannot be claimed that the damage was caused by an act of God if the defendant's fault was a contributory cause to the injury complained of. An occurrence is not an act of God excusing human accountability unless resulting from a cause which operates without interference or aid from man.

Suit for flowage brought within twenty years after the construction of a dam is a denial of the dam-owner's right to flow, and negatives the claim that a right of flowage has been acquired with the acquiescence of the owner of the land.

Whether evidence of the flow of the stream in years preceding the injury should be admitted, in view of the fact that the flow was controlled by third parties, is not a question of law, but a matter for the exercise of the discretion of the trial justice.

In an action for flowage of land by the defendant's dam, there is no legal objection to showing that the defendant has paid other parties owning land further up stream than the plaintiff's for flowing their land. Whether the facts necessary to make such evidence admissible are shown is a question for the trial court.

A finding by the trial court that it is more probable than otherwise that arguments excepted to were harmless to the defendant is sufficient. It is not necessary that the finding be absolute and affirmative, as the question is one which is to be settled upon the balance of probabilities.

While there was no claim of negligent handling of logs, it was not error to refuse to withdraw from the jury the issue of liability for damages by logs, there being evidence that the defendant's illegal management of its dam caused the logs to damage the plaintiff's land.

Rights of flowage and of running logs in a stream are limited by the rule that the use must be reasonable.

CASE, for flowage of the plaintiff's land in Milan. The second suit is for a later period. The defendant therein is the same as in the first suit, except for change of corporate name. Trial by jury with verdicts for the plaintiff.

Transferred by *Sawyer*, J., upon exceptions to the denial of motions for nonsuits and directed verdicts, to the admission and exclusion of evidence, to rulings upon remarks of counsel and to instructions to the jury given and refused. Further facts appear in the opinion.

*Murchie & Murchie* (by brief and orally), and *Warren W. James*, for the plaintiff.

*Sullivan & Daley* and *Shurtleff, Oakes & Hinkley* (*Mr. Sullivan* and *Mr. Oakes* orally), for the defendant.

PEASLEE, C. J.   These suits involve water rights on the Androscoggin river.   The plaintiff claimed damage caused by flowage and by floating logs.   The defendant denied the flowage, and also claimed a right to flow.   It excepted to the denial of its motions for nonsuits and for directed verdicts.   One ground taken is that there was no evidence of flowage.

An expert in hydraulics, called by the plaintiff, testified that the dam and flashboards would affect the height of the water at the plaintiff's premises.   One produced by the defendant denied the proposition.   Each sought to sustain his position by numerous data and voluminous computations.   It is urged here that the defendant's position must be accepted as the true one, as matter of law.   In order to reach such conclusion it must appear that there are established facts or matters of common knowledge which demonstrate the falsity of the plaintiff's claim.

The plaintiff's land is five miles up river from the defendant's dam.   At two intervening points the channel narrows, with a resulting acceleration of current and drop in surface level of the water. It is argued that this proves that the dam could not affect the level at the plaintiff's premises.   It may be that if this were a shallow stream, running over a shelving bottom, the argument would be sound.   But that is not the situation presented here.   The bed of the river, opposite the plaintiff's land and at all intervening points, is several feet below the level of the top of the flashboards.   It would seem evident that anything that retarded a free discharge of water at any point above the level of the bed would to some extent have a like effect over all the pondage.   In any event it cannot be said to be a matter of common knowledge that it would not have that effect, even when a free flow between the two points was further impeded by an insufficiency of width of channel.

It is a matter of more or less common knowledge that the efficiency of a water power may be greatly diminished by lack of a clear tail race.   Back water on the wheel decreases power because it retards the flow.   So here, the narrows undoubtedly slowed the discharge, but that slowing may well have been accentuated by lack of a free discharge below the narrows.

It is urged that an experiment conducted by the defendant at the time of the trial demonstrates beyond question the correctness

of the defendant's theory. The experiment consisted in closing the gates in the dam and noting the subsequent rise of water. In about an hour the water at the dam showed a rise of 13 inches and no change at plaintiff's premises. In about three hours the height at the dam was the same, and at plaintiff's land showed a rise of a quarter of an inch. The experiment was then abandoned, and the gates were opened.

While this may be persuasive evidence, it is by no means conclusive. No evidence has been pointed out which would demonstrate how long a period of time might elapse before the effect of closing the gates would be fully manifested at a point five miles up stream. It might be thought significant that the experiment was abandoned when a rise at that point began to be manifest. The claim that because four hours after the gates were opened the water at the dam was three-eighths of an inch higher than before the gates were closed, therefore the slight rise opposite plaintiff's land was not caused by the dam, fails to settle the matter for the same reason. It is inconclusive. The added flow at the dam may have been due to the fact that the storing up while the gates were closed had not been fully overcome. And if the cause was an added flow in the stream there is no evidence that it began while the experiment was being conducted.

The motions to take the cases from the jury because there was no evidence that the dam and flashboards affected the water level at the plaintiff's premises were rightly denied.

The plaintiff's complaint relates to flowage at times of unusual floods, and the defendant argues that the damage was caused by an act of God, for which it is not accountable. But if the defendant's illegal act in maintaining the dam increased the flowage under such circumstances, it is manifest that liability for such increase would be incurred. To excuse the defendant on this ground, it must appear that its fault was not a contributing cause for the wrong complained of. An occurrence is not an act of God excusing human accountability unless resulting from "a cause which operates without interference or aid from man." *Reed* v. *Hatch*, 55 N. H. 327, 337.

The defendant set up a prescriptive right to maintain its dam with 70 inches of flashboards. It relied in part upon evidence concerning an old dam for which the present structure was erected as a substitute in 1898. As to this it is sufficient to say that the evidence was not conclusive as to the extent of flowage by the old dam. That was used largely as an aid to running logs in times of

a large flow in the stream. It did not conclusively appear that water was kept up in those times to any such extent as in later years, or that there was ever any claim of a right to do so.

It is also claimed that such right has been acquired by the use of the new dam since it was built in 1898. But the plaintiff started his first suit before the twenty-year period had expired, and the claim is therefore without legal foundation. Bringing suit was a denial of the defendant's right, and disposes of any claim that the flowing was with the "acquiescence of the owner of the land." *Wallace* v. *Fletcher*, 30 N. H. 434, 444, 448. It negatived any idea of "submission and acquiescence of the land-owner." *Gilford* v. *Company*, 52 N. H. 262, 267.

Subject to exception the plaintiff testified that the high water had damaged his river banks. The objection was put upon the ground that the defendant had a deed of the right to drive logs in the river. It is not apparent how this fact rendered evidence of damage from high water caused by the new dam incompetent. The further objection urged here that the evidence was inconclusive, if of any legal importance, is not now open to the defendant. The excepting party is limited to the ground of complaint stated when the objection was made. *St. Laurent* v. *Railway*, 77 N. H. 460.

Evidence of the flow of the stream at various times in years preceding the time the injury was alleged to have been done was received subject to exception. Objection was put upon the ground that the flow was controlled by third parties. Such fact did not render the evidence incompetent or valueless, as matter of law. Whether it raised collateral issues that ought not to be gone into was for the presiding justice to determine. *Mason* v. *Railway*, 79 N. H. 300, and cases cited.

Measurements of flow at a point down stream from the dam, and below the point of influx of three smaller streams, stand upon the same ground.

One Cross was an owner of meadows near the plaintiff's, and testified as to conditions along the river and at the dam at the times complained of. He did not undertake to assign the cause of the high water, but it might be inferred from the facts detailed by him that the dam was the efficient cause rather than log jams at the narrows above. He had sued for damage to his land, and had testified at the trial of his case. On cross-examination here he was inquired of as to statements then made tending to show that he then charged that the log jams were the cause of the trouble. He admitted

the statements. Subject to exception, further inquiry as to whether he made any claim in his suit that the dam caused the trouble was excluded. The extent of cross-examination is usually a matter to be decided by the presiding justice. The essential fact appeared. The witness had theretofore charged the trouble to the jams. Whether counsel should be allowed to go further and reënforce that fact with added ones as to the conduct of the witness's own suit is a proposition which does not present any question of law. It might involve collateral issues as to why he did or did not put his claim upon certain grounds. Refusal to open up such a field of investigation does not raise any question for this court. *Mason* v. *Railway, supra.*

Subject to exception, evidence was received tending to show that the defendant paid other parties owning lands along the river for flowing their lands during the periods in question. The evidence was of a class which may be received. *Eastman* v. *Company,* 44 N. H. 143, 153. Whether the facts necessary to render it admissible are shown is a question for the trial court. *Colburn* v. *Groton,* 66 N. H. 151.

The objection that the payments were in the nature of compromises rather than admissions of fault was not made at the trial. It follows that it is not open here. *St. Laurent* v. *Railway, supra.* The main contention was and is that no sufficient similarity of situation was shown. The defendant claimed that the dam did not affect the water at the plaintiff's premises. The persons to whom payments were made owned land up river from the plaintiff's. It is evident that if the dam affected the water level at a certain place it did so at points nearer the dam.

One Sanborn, an employee of the defendant, was called by the plaintiff and stated that he had testified for the defendant in several cases which were named. In answer to an inquiry whether he had testified in every case involving this dam, since 1886, he replied: "I don't know about that. I have testified a lot." He was asked on cross-examination whether he had ever known of but two suits being brought. The question was excluded. The fact sought to be elicited was immaterial. If the object was to show in this indirect way that the witness had testified but twice, no reason appears why the direct question could not have been put. There was no suggestion made that this was the object, and there was no error in excluding the question.

Some years ago a dam was built at Aziscohos Falls, creating a large storage basin and used to regulate and stabilize the flow of

the river.   Subject to exception, witnesses were permitted to testify that high water was more prevalent since the dam was erected than before.   The evidence tended to prove a cause for high water.   As this was one of the main issues tried, no valid objection to the evidence is apparent.   What the effect of the fact thus sought to be established might be upon the defendant's liability is a question not presented by this exception.

Photographs of the plaintiff's premises, taken in 1922, were admitted subject to exception.   The condition of the premises at that time might well have a tendency to prove the results of floods at earlier times, or other facts pertinent to the case.   It was not necessary that the photographs tend to prove the whole of the plaintiff's case.   The exception is overruled.

The objection to the interrogatory in the deposition of Orton B. Brown, as to whether his company had any other right than under the Coe & Pingree deed, comes to nothing as the witness answered "I couldn't say."

Objection is made because the plaintiff was allowed to show that the defendant is a Maine corporation.   As the defendant had already put in evidence the Coe & Pingree deed, wherein the Berlin Mills Company is set out as "a corporation duly established under the laws of the state of Maine," it could not have been harmed by added proof of such fact.

Evidence of measurements of rise of water above the plaintiff's premises, at points concededly not affected by the defendant's dam, was excluded as too remote to be useful in the trial.   No reason is suggested for reversing the ruling except that the evidence had a tendency to prove the defendant's claim.   Conceding this to be true, it does not avail the complaining party in the absence of a demonstration that the evidence could not be found to be too remote.

There were exceptions to rulings upon argument.   The complaints related to statements as to what the evidence was.   In each instance the jury were instructed to take their own recollection of the evidence.   The court found "it more probable than otherwise that the arguments excepted to were harmless to the defendant." The finding is attacked as not amounting to "an absolute or affirmative one such as the law requires."   The contention cannot be sustained.   The question was to be settled upon a balancing of the probabilities, and when it was determined where the balance was, the question was answered, as matter of law.   *Tuttle* v. *Dodge*, 80 N. H. 304, 313.

"When the party having the affirmative of the issue has established the probable truth of his contentions, he has met the burden resting upon him. A finding that the defendant probably knew the defect in the note is a finding that the plaintiff, upon whom the burden rested, had satisfied the trier of fact that the defendant knew the fact. No advantage is perceived in the use of the more cumbersome expression. If its use implies some doubt, it also contains the assertion that the doubt is not serious enough to affect the result. Not affecting the result, its suggestion helps no one." *Moffie* v. *Slawsby*, 77 N. H. 555, 556.

Exception was taken to the refusal to withdraw from consideration of the jury "the question of liability for damages occasioned by logs in the river." There was no claim of negligent handling of the logs. That fact, however, did not exonerate the defendant from liability for "damage occasioned by the logs," if, as the evidence tended to prove, the defendant's illegal management at the dam caused the otherwise unoffending logs to work injury to the plaintiff's land. The exception is overruled.

Exceptions to the charge and to refusal to give requested instructions are based on claims that there was no evidence of negligent exercise of river driving rights and that proof of prescriptive title to flow was conclusive. The proof was not conclusive upon either issue. Nor does the claim of an admission by counsel that there was no evidence to sustain a claim of wrong done because of the logs dispose of the matter in the defendant's favor. That concession was merely that there was no proof that there was negligent handling of the forty million feet of logs there present. It was not conceded, however, that the placing and keeping of so extensive an obstruction in the stream was proper or reasonable. It was the defendant's constant claim throughout the trial that if anything beyond natural causes held back the water it was the log jams at the narrows. The question of the reasonableness of using the stream as a place of log storage when such results might follow was clearly for the jury.

Objections to the charge upon the ground that the defendant had absolute rights of flowage and of running logs do not require extended consideration. Its rights were limited by the rule that the use must be reasonable. *Chapman* v. *Company*, 74 N. H. 424, and cases cited.

The request to charge that the defendant had the right to hold the water as high as it was held by the Hutch dam when in use, leaves out of consideration the disputed question whether there was

a continuous holding or merely a seasonal one. For that reason, the request was properly denied. *Burnham* v. *Kempton*, 44 N. H. 90; *Griffin* v. *Bartlett*, 55 N. H. 119; *Gilford* v. *Company*, 52 N. H. 262.

*Exceptions overruled.*

All concurred.