Cheshire,  }
June 30, 1917. }

CHARLES P. SPENCER *v.* CONNECTICUT RIVER POWER COMPANY.

Under the mill act (P. S., c. 142, s. 12) a petition for the assessment of flowage damages may be maintained by one whose title to the land flowed was acquired subsequent to its flowage, if his grantor had not been dispossessed of such property right.

PETITION, for an assessment of the damages caused by flowing the plaintiff's land by the defendants' dam.   At a hearing before the court, it was agreed that the plaintiff acquired title from two to five years after the defendants' dam was filled and the land first flowed. No damages have been paid by the defendants to the persons who owned the premises when the flowage commenced and no other

petition for the assessment of damages for such flowage has been filed. Upon these facts the court ordered the petition dismissed, and the plaintiff excepted. Transferred from the October term, 1916, of the superior court by *Branch*, J.

*Joseph Madden* (by brief and orally), for the plaintiff.

*Harold E. Whitney* (of Vermont), and *Philip H. Faulkner* (*Mr. Faulkner* orally), for the defendants.

PARSONS, C. J. When land is taken *in invitum* by eminent domain, the damages belong to the owner at the time of the taking. *Locke* v. *Laconia*, 78 N. H. 79; *Hadlock* v. *Jaffrey*, 75 N. H. 472; *Hodgman* v. *Concord*, 69 N. H. 349; *Bean* v. *Warner*, 38 N. H. 247; *Moore* v. *Boston*, 8 Cush. 274. In these cases the legal taking was considered to be coincident with the entry upon the land and consequently the damages belonged to the owner at the time of the entry. Under the mill act (P. S., c. 142, s. 12) and the defendants' charter (Laws 1907, c. 244, s. 3; Laws 1903, c. 306, s. 4) the defendants could acquire the right to flow lands of other owners and be relieved from common law liability for so doing only by the payment or tender of the damages ascertained by agreement or through proceedings under the acts. Until such payment the defendants are liable in an action of tort at common law for the damage done by flowing lands of others. *Roberts* v. *Railway*, 73 N. H. 121; *Ash* v. *Cummings*, 50 N. H. 591. As the defendants at the time of the plaintiff's purchase had taken no steps to dispossess his grantors of their property rights which had been invaded by the flowage, their deeds to the plaintiff conveyed the lands unhampered by such a right then unacquired and which never might be obtained. Although the grantors had a common law right of action for damages they did not have a legal right to an assessment under the statute. Their petition for such assessment would have been dismissed unless the defendants had joined in requesting an ascertainment of the value of the flowage right in the land. Upon the defendants' disclaimer of an intention to acquire such a right, a petition by the plaintiff's grantors would have been dismissed, as the present will be, upon such plea. *Jones* v. *Whittemore*, 70 N. H. 284; *Chapman* v. *Company*, 67 N. H. 180. As the defendants have not yet legally taken the plaintiff's land for flowage purposes, the present proceeding is maintainable, if they now desire to do so, and the damages will be recoverable by the owner at the time of the taking.

In *Hadlock* v. *Jaffrey*, 75 N. H. 472, the water right taken was taken under a special act authorizing the town to construct water. works and not under the flowage act and the decision appears to stand upon the finding in the case that the right was taken by the town prior to the plaintiff's acquisition of title. The plaintiff by bringing this proceeding admits the flowage "is or may be of public use or benefit," (P. S., c. 142, s. 15) and hence that the defendants may acquire the right of flowage by payment of damages, *i. e.*, that they may legally take the land not that they have legally taken it.

As the plaintiff may maintain this proceeding under the original act, it is unnecessary to consider the effect of c. 326, Laws 1909,. amending s. 8 of c. 244, Laws 1907, which gave the defendants power to erect a dam across the Connecticut below the mouth of the Ashuelot. The special provisions relied upon by the plaintiff appear to relate solely to the flowage from the dam at this point, and, if they could be construed to apply to flowage from other dams, they. certainly would not have that effect until the defendants had accepted the amendment and built the dam, which does not appear to have yet been done.

*Exception sustained.*

All concurred.