Sullivan,
No. 5721.

LORA B. BARTON, *Adm'x & a.*

*v.*

FRED K. PLAISTED, JR. *& a.*

Argued April 2, 1968.
Decided June 30, 1969.

*McLane, Carleton, Graf, Greene & Brown* and *William E. Nolin,* for Patricia Jackman, ex'x and Phyllis Taylor, adm'x; *Shulins & Duncan,* for Barton, adm'r and Hiltz, adm'r; *Leahy & Denault,* for Hardy, adm'r; *John C. Fairbanks,* for Barton, adm'x; *Mr. Stanley M. Brown* orally, for all plaintiffs.

*Wiggin, Nourie, Sundeen, Nassikas & Pingree* and *Dort S. Bigg, Jr.* (*Mr. Bigg* orally), for the defendants.

DUNCAN, J. Six of these actions were brought to recover for the wrongful deaths of the plaintiffs' intestates in a collision which occurred at about 6:30 A.M. on November 13, 1961 at Croydon. A seventh action seeks recovery for property damage suffered by the plaintiff Patricia Jackman's testator. Trial was commenced on September 30, 1963, by jury, with a view. Defendants' verdicts were returned in all cases on October 17, 1963. The Presiding Justice (*Keller*, J.), thereafter transferred to this court questions of law presented by exceptions taken by the plaintiffs in the course of the trial, and to the denial of their motions to set the verdicts aside.

Following transfer, however, the plaintiffs sought by motion filed in this court to establish procedures in this court to obtain evidence in support of their exceptions. This motion was denied without prejudice on December 30, 1964. *Barton* v. *Plaisted,* 106 N. H. 117. Early in 1965 the plaintiffs' motion to remand the cases to the Superior Court was granted. In the Superior Court plaintiffs then moved for new trials on the basis of newly discovered evidence. Certain other motions later filed by the plaintiffs were denied by the Presiding Justice. In August 1966, supplementary examination of two expert witnesses who had testified at the trial was conducted before the Superior Court. The Court made findings and rulings, and denied the motions for new trial, subject to the plaintiffs' exceptions. All questions of law presented by the exceptions taken at the trial, and at the subsequent proceedings were then reserved and transferred by the Presiding Justice.

The collision which resulted in the instantaneous death of five occupants of a 1960 Chevrolet sedan operated by Mrs. Evelyn P. Jackman occurred as the southbound vehicle rounded a twelve degree curve to the left and encountered a 1958 Mack dump truck operated by the defendant Plaisted, travelling in the opposite direction. The weather was foggy and drizzly. The travelled way, which was divided into two lanes by a painted center line flanked by two yellow no-passing lines, averaged twenty-six feet in width including the paved shoulders.

The left front of the Chevrolet was in collision with the left rear dual wheels of the truck. There was no contact between

the Chevrolet and any part of the truck forward of its rear dual wheels. It was not disputed that when the impact occurred the vehicles were on opposing courses forming an angle of approximately 20 degrees.

The plaintiffs sought to establish that on impact the truck was travelling on a twenty degree angle to the center of the road with its left rear projecting well into the southbound lane. The defendants' contention was that the Chevrolet was travelling at an excessive speed, and swerved or skidded into the truck as it proceeded wholly within the northbound lane.

Since the only eye-witness was the truck driver, the defendant Plaisted, both plaintiffs and defendants relied in part upon expert testimony in an attempt to reconstruct the collision, with the aid of photographs and measurements of the physical surroundings.

A major issue presented in this court relates to the testimony of two expert witnesses, Andrew J. White and James W. MacDonald, called by the defendants. The plaintiffs' motion for new trial was grounded upon newly discovered evidence allegedly indicating that the testimony of these witnesses was false and fraudulent, and therefore unworthy of belief. At about the same time a similar issue regarding testimony of the witness White was being raised in another case. *Cormier* v. *Stevens*, 107 N. H. 66, 67.

Following the hearing of August 1966 in the case at bar, the Trial Court found that White had intentionally falsified certain testimony concerning his background, experience, and method of operation; and that both he and MacDonald had testified falsely concerning the width of the shoulder of the northbound lane, after having discovered that testimony concerning the measurements which they had previously given at the trial was incorrect.

With respect to the testimony on shoulder width, the Court specifically found and ruled in part as follows: "[White's] testimony that the shoulder to the guard rail was three feet was not reasonably accurate; this shoulder would, according to their method of measuring, include both the bituminous and gravel shoulders . . . . In fact the shoulder opposite the southernmost guard rail post was about six feet wide . . . . When later that morning he testified that the shoulder width in question was three feet, his testimony was intentionally false. The above finding that White gave intentionally false testimony relative to the

shoulder width is based on newly discovered evidence. It is also found from newly discovered evidence that White intentionally testified falsely to the effect that the reason he approximated the rest position of the Chevrolet from photographic evidence was because no measurements were given to him . . . . It is found from the newly discovered evidence that MacDonald gave intentionally false testimony when he testified that, at the . . . point of impact, the guard rail was three feet from the travelled part of the highway."

Having made these and other findings and rulings, the Trial Court properly ruled that "whether or not the verdicts should be set aside or the cases declared mistried, and new trials granted, because of White's and MacDonald's intentionally false testimony, or because of the newly discovered evidence, or other related reason, depends on whether or not justice was done, and whether or not a new trial would be equitable." RSA 526:1.

The width of the northbound shoulder was significant because of testimony by the witness White that the northbound lane was substantially narrower than the southbound lane. This was in conflict with the plaintiffs' evidence which showed them to be approximately equal in width. White testified that because of the narrow lane the truck could not have been travelling at the time of impact at an angle of twenty degrees to the center line without having collided with the guard rail. Since it did not, he concluded that the truck could not have been crossing from the south to the north bound lane when the collision occurred.

Having found that the testimony given by White and MacDonald was intentionally false, the Trial Court proceeded to make additional findings bearing upon the issues, including findings that "the evidence does not establish that the false testimony . . . was a cause of the verdicts" or "that there would probably be a different result on a new trial." The Court then ruled that "it has not been proven that justice has not been done, nor that a new trial would be equitable," and denied the plaintiffs' motion.

We agree that the Trial Court most properly characterized the conduct of these witnesses as "reprehensible." The exposure, by the Court's findings of their intentionally false testimony in these cases may forecast an end to their usefulness as professional witnesses. However their misconduct in itself is not decisive of the plaintiffs' rights.

The principles which come into play in the disposition of a motion for new trial upon the ground of newly discovered evidence are well defined by our decided cases. *Rautenberg* v. *Munnis,* 109 N. H. 25, 26, and cases cited. A new trial will be granted only if specified conditions are met, which include findings that the parties were not at fault in not discovering the evidence at the former trial and that the newly discovered evidence is such that a different result will probably be reached upon new trial. *Id.* A single exception to this requirement is recognized in cases where there is newly discovered evidence that a party has given false and dishonest testimony concerning a material issue. In such cases it has been held that the verdict will be set aside "even if it is not found that a new trial will probably produce a different result." *Rasquin* v. *Cohen,* 92 N. H. 440, 442. See *Hebert* v. *Railroad,* 90 N. H. 324. Cf. *Cormier* v. *Stevens,* 107 N. H. 66; *Tremblay* v. *Donnelly,* 103 N. H. 498.

The exception obviously will not apply to these cases, unless it is extended to place responsibility for the false testimony of an expert witness upon the party who proffers his testimony. The plaintiffs advance two propositions in support of their argument: (1) that as a matter of law a witness should not be found qualified to give expert testimony in the absence of "some showing" that he is a "man of testimonial integrity," and (2) that under the principle of *respondeat superior,* a party should be held responsible for deliberate falsification by his expert witness, since selection of such a witness is wholly within the party's control.

We do not find these arguments so persuasive as to merit adoption. The difficulty of establishing as a preliminary matter the abstract proposition that an expert witness proffered by a party is a "man of testimonial integrity" is readily apparent. And see, Wigmore on Evidence (3d *ed.*) ss. 515, 1985. Not only would such a requirement open up avenues to the exploration of collateral and unrelated issues arising out of prior testimony in other cases, but it would seriously encroach upon the traditional prerogative of the jury to pass upon the fundamental issues of the credibility of witnesses.

Nor do we think that an expert witness may be said to automatically become the agent or servant of the party who offers his testimony. The doctrine of *respondeat superior* "rests on the

employer's right of control and direction." *McCarthy* v. *Souther*, 83 N. H. 29, 36. "If there is no such right, the relation does not exist." *Manock* v. *Company*, 86 N. H. 104, 106. A party does not prescribe the testimony which his expert shall give, nor does he normally procure or authorize falsification by such a witness. At all events, we are not prepared to charge a party with the conduct of an expert witness in the absence of evidence of the party's responsibility therefor.

The case is not one of the receipt of incompetent and inadmissible testimony, as in *Ellingwood* v. *Bragg*, 52 N. H. 488. Despite findings that he had intentionally falsified certain testimony respecting his past association and distinctions, the witness in the case before us was found qualified "insofar as his training and experience was concerned." So far as appears, we are concerned with falsification by a professional witness acting upon his own responsibility. If exposure of the falsity would probably produce different verdicts upon retrial, justice might be thought to require that the parties who retained the witness should suffer the loss of their verdicts; but they should not be automatically penalized without regard to the probability of a different result upon retrial.

The plaintiffs argue that the Trial Court erred in finding that the false testimony was not shown to have been a cause of the verdicts. It is clear that the defendants' verdicts were warranted by other evidence in the cases, as the Trial Court found in passing upon the motion. The Court also took into account the fact that the accuracy of the plan prepared by White, showing a three-foot shoulder along the rail, was called in question at the trial, and denied a request for a finding that the plaintiff "used reasonable diligence . . . to combat" White's testimony as it related to the distance to the guard rail. Additionally, it must be assumed that the Court considered the relative importance which the jury probably attached to the testimony of the experts at the trial. An examination of the record tends to the conclusion that the weight of the testimony of the experts on both sides was seriously affected by exposure of the weaknesses of their positions through skillful cross examination.

We are satisfied that the Trial Court carefully weighed all of the questions raised by the plaintiffs' motion for new trial, and by their requests for findings and rulings which were meticulously reviewed even though the Court considered them "excessive" in

number. See *Redlon* v. *Corporation,* 90 N. H. 519, 533. We find no cause to hold erroneous as a matter of law the ruling by the Justice who participated in this closely tried litigation, that it has not been established that justice requires a new trial.

The plaintiffs' contentions concerning alleged errors in the course of the trial have accordingly been reviewed. They argue that White's testimony should have been stricken by the Trial Justice, because it was based extensively upon assumptions not warranted by the evidence. The speculative nature of these assumptions was adequately exposed at the trial. The plaintiffs' motion to strike the testimony was not based upon this ground, but upon the contention that the witness' presentation was false, fraudulent, and unworthy of belief. No specific exceptions taken in the course of the  witness' examination are relied upon to support the argument now made, apart from the exception to denial of the motion to strike. That exception is overruled.

The plaintiffs further argue that it was error to receive certain of White's testimony concerning observations made by him, after the accident, of conditions affecting the conduct of southbound drivers traversing the curve where the accident occurred. An examination of this testimony discloses no exception which presents reversible error.

Following the trial, the plaintiffs sought new trials upon the ground of misconduct by a juror in making independent observations at the scene while the trial was in progress. Specifically it was claimed that the juror observed a tendency on the part of southbound travellers to cut across the center line of the curve. The alleged observations coincided with those testified to by the witness White at the trial. It is not contended that the juror's conduct approached the activity of the juror involved in *Caldwell* v. *Yeatman,* 91 N. H. 150. The question in this court is whether the Trial Court "abused his discretionary power when he declined to sift the matter further by recalling the jurors . . . ." *Id.,* 155. The Court found as a fact that it was unnecessary to interrogate the jurors upon the issue. See *Chouinard* v. *Shaw,* 99 N. H. 26. Since the finding is sustainable, we hold that there was no abuse of discretion. *Brown* v. *Smith,* 89 N. H. 133. The exception to denial of this motion is overruled.

The plaintiffs attack as incompetent the testimony of several witnesses bearing upon the speed of the Jackman vehicle, including the testimony of the defendant Plaisted; the opinions of a

trooper and of the witness White based in part upon the condition of the Chevrolet; and the testimony of a witness concerning the deceased operator's habitual conduct in approaching the scene of the accident.

Any objection to Plaisted's testimony went only to its weight. *Cedergren* v. *Hadaway*, 91 N. H. 270; *Bissonnette* v. *Cheverette*, 87 N. H. 211. The testimony concerning the decedent's customary driving speed over a period of years, along the "flat" leading southerly into the curve where the accident occurred, was competent and properly received. *Buxton* v. *Langan*, 90 N. H. 13. See *Carter* v. *Bergeron*, 102 N. H. 464, 469-470; *State* v. *Cornwell*, 97 N. H. 446, 447. It was not so general in character as to fall into the category of evidence of "general character for care or negligence" which would not have been admissible. *Greenwood* v. *Railroad*, 77 N. H. 101, 102. Nor was it "too remote to be of any value" to the triers of the fact. See *Giroux* v. *Gagne*, 108 N. H. 394, 397.

The opinions concerning the speed of the Chevrolet which were voiced by the state trooper and the expert White were also properly received in the Court's discretion. *McCarthy* v. *Souther*, 83 N. H. 29, *supra*; *Freeman* v. *Scahill*, 92 N. H. 471. See Annot. 93 A.L.R. 2d 287. The trooper's opinion that the speed was "excessive" did not rest solely upon the damage to the vehicle. White's testimony pertained to the "*relative* velocities" of the two vehicles, determined by reference to the kinetic energy exerted and expended by each in the collision. He conceded that it was impossible to calculate the exact speed of either vehicle, or the energy "used up" in the deformation of the Chevrolet. The record shows no exception, or motion to strike White's testimony, which would present the issue now under consideration.

During the examination of the first witness at the trial, a photographer, an impasse was reached concerning the admission in evidence of the witness' notes of what he had done, and of his sketch indicating where he had taken photographs soon after the accident. He had previously referred to the documents in testifying, and the Court was prepared to receive them in evidence as business records if certain notations considered incompetent were eliminated, including a reference to certain marks on the highway as "tire marks." Plaintiffs' counsel excepted to this conditional exclusion of the exhibits. The witness had previously referred to "tire marks" on several occasions. Defendants'

counsel objected to receipt of his opinion as to whether certain marks were "probably made by dual wheels," and the objection was sustained. Later, plaintiffs' counsel declined to attempt to qualify the witness as an "expert on tires."

The plaintiffs argue that it was prejudicial error to exclude the exhibits and the testimony of this witness on "tire marks," when testimony was received from other witnesses that "tire marks" were seen, or that certain marks shown by photographs were not "tire marks." We are satisfied from our examination of the record that the rulings of the Court were within its discretion and free from reversible error.

Counsel for the Jackman estates excepted to instructions to the jury on the issue of contributory negligence as follows: "If a person is legally at fault to any extent, however slight, that is sufficient to make him or her chargeable with legal fault in determining the question of liability." The exception as taken was to "use of the words 'ever so slight' "; and substitution of the expression "to any material degree" was suggested. While not in the exact language of the charge, the purport of the exception was apparent.

In the context in which the Court's language was used, we think that the instructions afforded no ground for reversal. The charge had previously defined "legal fault," as applied to both operators, as including both causal negligence and causal violation of statute. "Causal" was briefly defined. The jury was then instructed: "The degree of legal fault is not material. If a person is legally at fault to any extent, however slight, that is sufficient to make him or her chargeable with legal fault in determining the question of liability."

The charge proceeded to define negligence, due care, and proximate cause, the latter as a negligent act or statutory violation which "directly causes or helps to cause the accident." These general principles were then applied to the claims made concerning the conduct of the defendant Plaisted, and that of the deceased operator of the Chevrolet. The jury was specifically told that if the latter was negligent, or violated a statute, or both, and if such conduct "was a proximate cause of the accident . . . then she would be legally at fault"; and that if her conduct was not negligent and violated no statute, or if it was not a proximate cause, "she would not be legally at fault." There followed

a reiteration of these principles as applied to the several actions in which verdicts were required.

The concept of "degrees of legal fault" is not calculated to aid a jury since "legal fault" imports both negligence and causation. *Frost* v. *Stevens,* 88 N. H. 164, 167. However, the clarity and emphasis of the instructions, defining negligence and causation and applying the law to the issues presented, precluded the possibility that the jury was misled into a finding of fault on less than legal cause by the use, in a single instance, of the expression "legally at fault to any extent, however slight." *Eastman* v. *Herrick,* 87 N. H. 58, 61.

We conclude that the order should be

*Exceptions overruled;*
*judgment on the verdicts.*

GRIFFITH, J., did not sit;
GRIMES, J., dissented; the others concurred.

GRIMES, J., *dissenting*: In my view the intentionally false testimony of an expert who has been sought out, hired and presented as a witness should be chargeable to the party who proffers his testimony. As long ago as 1843, it was held that a principal is chargeable with the fraud of his agent, even though he did not commission the fraud. *Concord Bank* v. *Gregg,* 14 N. H. 331. See also, *Saidel* v. *Society,* 84 N. H. 232; 37 Am. Jur. 2d, Fraud and Deceit, s. 311-319. While this type of expert witness may not be the agent of the party in the true sense, the same policy considerations should apply in that as between two innocent persons the burden of misconduct of a third should fall upon him who placed the third person in the position to commit the wrong. Also, the party proffering the testimony of such an expert has as much right to insist that he tell the truth as a principal has to insist that his agent not act fraudulently, and the actual ability to control is often no greater in one case than the other.

The expert witness of the type here involved is in a very different relationship to the party than an ordinary witness who, without being engaged for the purpose of testifying, is in possession of information relating to the case to be tried.

We are dealing here not only with what effect newly discovered

evidence would have at a new trial but with the fact that the jury was permitted to hear and consider testimony from two hired witnesses on a "signficant issue" which has now been found to have been fraudulent. To deny a new trial unless the plaintiff can prove by a preponderence of evidence that a different result would probably be reached at a new trial seems unrealistic.

The Court in *Rasquin* v. *Cohen,* 92 N. H. 440, 441, expressed dissatisfaction with the rule that it must be found probable that newly discovered evidence will produce a different result, saying "A rule which requires the Presiding Justice to forecast the workings of the minds of twelve supposititious jurymen can hardly be regarded as sensible."

In *Ellingwood* v. *Bragg,* 52 N. H. 488 (1872) which involved the question whether there should be a new trial when the jury had been permitted to consider incompetent evidence the court said at *p.* 491: "Jurors alone, and not courts at all, are to determine the weight of the evidence and the court can never say what effect any fact that is relevant may have or may have had on the minds of the jury . . . and it can be only where a case has been clearly and indisputably made out, without the objectionable evidence, that a new trial can properly be refused." It was held that when the jury was permitted to hear and consider incompetent evidence a new trial should follow unless it "very clearly appear that the improper evidence could not have affected the verdict."

It seems to me that intentionally false testimony by expert witnesses is as incompetent as any evidence can be and I would place the burden on the party who sought out and proffered the witnesses to prove "very clearly" that their testimony could not have affected the verdict.

It is not only the effect that their known intentionally false testimony may have had on the result that must be considered because if the false testimony had been exposed at the trial the jury could have disbelieved their entire testimony. Also the fact that an expert could be found qualified without his false testimony regarding qualifications does not eliminate the effect that the false testimony on qualifications may have had on the weight which was given to his opinion.

The fact that the verdict is sustainable on other evidence is irrevelant. The question is not whether the verdict was sustainable on other evidence but whether the testimony of these experts can

be said to have had no effect on the choice the jury made between two sustainable verdicts.

In my opinion it cannot be found in this case that the testimony of these experts "very clearly" could not have affected the verdict and I would therefore grant a new trial. *Ellingwood* v. *Bragg, supra.*