Coos,
No. 6252

RAYMOND A. & HAZEL L. MOULTON

*v.*

GROVETON PAPERS COMPANY & *a.*

TOWN OF STARK

*v.*

SAME.

RAYMOND D. STONE

*v.*

SAME.

March 7, 1972.

*Sheehan, Phinney, Bass & Green* and *E. Paul Kelly, Hale & Dorr* and *Stephen H. Oleskey* (of Massachusetts) (*Mr. Oleskey* orally) for the plaintiffs.

*Wiggin, Nourie, Sundeen, Pingree & Bigg* and *W. Wright Danenbarger* (*Mr. Danenbarger* orally) for the defendants.

LAMPRON, J.   Actions by the various plaintiffs for property damages caused on May 20, 1969, by the failure of the Nash Pond Dam in the town of Odell owned by the defendants which resulted in the discharge of a large amount of water downstream over their properties. Also petitions by the Moultons and the town of Stark for assessment of damages under the provisions of RSA 482:23.

Count one of each declaration is based on a negligent failure to properly maintain, repair, operate, and control their Nash Bog Pond Dam in such a way as to prevent damage to the property of others. This count is not in issue on this appeal and is not considered further in this opinion. Defendants filed motions to dismiss the remaining three counts seeking recovery on the basis of absolute or strict liability on the ground that they do not state a cause of action. Defendants also moved to dismiss the petitions for assessment of damages under the statute. Defendants further moved to dismiss those parts of the Moulton actions which seek damage to property subject to a reservation in a deed to their immediate predecessor in title excepting and reserving flowing rights to the defendants' predecessor in title. The Trial Court (*Morris,* J.) reserved and transferred the issues raised thereby without ruling.

Count two is based on a violation of the statutory duty imposed on the defendants "by RSA 482 to repair, operate, maintain, and control" their dam so that it did not become "a dam in disrepair." The general purpose of RSA ch. 482 is to insure the supervision and control of the high and low water levels in the inland public waters of the State, and also of the instrumentalities by which these levels are affected, such as dams. RSA 482:2-16, 19. The Water Resources Board charged with these duties "may call to conference owners of dams for the purpose of obtaining co-operation in the regulation of stream flow to minimize damage to public and private property at times of high water." RSA 482:2. Section 42 imposes on the owners of a dam the duty to so maintain and repair it that it shall not become "a dam in disrepair." The latter is defined in part as a dam which is a menace to public safety, or is not adequately equipped to provide for the holding or controlled discharge of waters impounded. RSA 482:1(III).

We are of the opinion and hold that RSA 482:42 provides a standard of conduct on the part of dam owners intended to protect against damage from the flooding of the land of others by their dams. We further hold that plaintiffs' lands can be considered to be within the orbit of the risk of danger which could result from a violation of the statute. *Derby* v. *Company*, 100 N.H. 53, 58, 119 A.2d 335, 340 (1955); Prosser, Law of Torts *s.* 36, at 195-96 (4th ed. 1971); Restatement (Second) of Torts, *s.* 281, Comment *e*(1965).

It is well established law in this State that a causal violation of a statutory standard of conduct constitutes legal fault in the same manner as does the causal violation of a common-law standard of due care, that is, causal negligence. *Frost* v. *Stevens*, 88 N.H. 164, 167, 184 A. 869, 872(1936); *Barton* v. *Plaisted*, 109 N.H. 428, 437, 256 A.2d 642, 648 (1969); *see Gorman* v. *New Eng. Tel. & Tel. Co.*, 103 N.H. 337, 342, 172 A.2d 372, 375 (1961). In both instances liability is imposed because of the existence of legal fault, that is, a departure from a required standard of conduct. This is not strict liability as contended by the plaintiffs, which imposes liability even though the defendant has not departed in any way from a statutory or common-law standard of care, that is, without being guilty of legal fault. *Buttrick* v. *Lessard*, 110 N.H. 36,

39, 260 A.2d 111, 113 (1969); Prosser, Law of Torts *s.* 75, at 494 (4th ed. 1971). We hold that count two may be maintained on the basis of legal fault resulting from a causal violation of RSA 482:42.

Plaintiffs in count three of their declarations seek recovery on the basis that strict liability should be imposed on owners of dams in disrepair as they constitute an ultrahazardous activity. The basis for holding such a defendant liable without negligence is that the activity engaged in is unusual and abnormally dangerous thus creating an undue risk of harm to other members of the community. Prosser, Law of Torts *s.* 75, at 494-95 (4th ed. 1971); Restatement of Torts, *ss.* 519-20 (1938).

This doctrine is said to have originated with the case of *Rylands* v. *Fletcher,* (1868) L.R. 3 H.L. 330, where mill owners were held liable without negligence for damage caused by water which escaped from a reservoir constructed on their land. The conditions and activities to which the rule has been applied include water collected in quantity in a dangerous place, explosives and blasting. *United States* v. *Ure,* 225 F.2d 709 (9th Cir. 1955); *Spano* v. *Perini Corp.,* 25 N.Y.2d 11, 250 N.E.2d 31, 302 N.Y.S.2d 527 (1969); *see* Prosser, *supra* at 509-10.

Plaintiffs admit that New Hampshire early rejected the *Rylands* v. *Fletcher* (*supra*) rule. *Brown* v. *Collins,* 53 N.H. 442 (1873); *Moore* v. *Berlin Mills Co.,* 74 N.H. 305, 67 A. 578 (1907). As recently as 1956 this court made the following statement. "An examination of the cases in this state definitely indicate a clear tendency to limit strict liability to those cases where the Legislature has provided for it . . . or to those situations where the common law of this state has imposed such liability and the Legislature has not seen fit to change it." *King* v. *Association,* 100 N.H. 212, 216, 123 A.2d 151, 155 (1956); *Wadleigh* v. *Manchester,* 100 N.H. 277, 279, 123 A.2d 831, 833 (1956). Plaintiffs maintain, however, that the rule of strict liability adopted in *Buttrick* v. *Lessard,* 110 N.H. 36, 260 A.2d 111 (1969) as to injuries caused by defective products marks a departure from the above trend. They suggest that the rationale of that case should be applied to damage from water escaping from a dam in disrepair.

It is to be noted, however, that since early days sellers

of food have been regulated in this State, as elsewhere. R.S. tit. XIII, chs. 99-103 (1842); Restatement (Second) of Torts, *s.* 402-A, Comment *b* (1965). The Uniform Sales Act (Laws 1923, ch. 122) previously, and now the Uniform Commercial Code (Laws 1959, ch. 247, now RSA ch. 382-A) imposes certain warranty obligations on all sellers covered by it. However, the multiple difficulties encountered in obtaining relief under their warranty provisions gave birth to the remedy of strict liability. *Elliott* v. *LaChance*, 109 N.H. 481, 484, 256 A.2d 153, 155 (1969); *Buttrick* v. *Lessard*, 110 N.H. 36, 260 A.2d 111 (1969); *see McLaughlin* v. *Sears Roebuck & Company*, 111 N.H. 265, 281 A.2d 587 (1971). We are of the opinion that the history and the considerations which have led this court to adopt strict liability in products actions are substantially different from those which prevail in the case of dams. For the same reason we have refused to impose strict liability in the case of an insurer who has failed to settle a case within its policy limits. *Dumas* v. *State Mut. Auto Ins. Co.*, 111 N.H. 43, 274 A.2d 781 (1971). We hold that count three of the declarations should be dismissed.

Count four of plaintiffs' declarations seek recovery on the ground that the flowing of their lands by the waters released from defendants' dam constituted a harmful trespass. Plaintiffs recognized that under the established law of this State a trespass must be an intentional invasion of the property of another. *Carter* v. *Thurston,* 58 N.H. 104 (1877); *White* v. *Suncook Mills,* 91 N.H. 92, 98, 13 A.2d 729, 733 (1940); *see* Restatement (Second) of Torts, *s.* 158 (1965). Hence they suggest that recovery might be based on a finding of a "constructive intent" which they admit is "a somewhat artificial legal construction." Essentially the count in trespass is merely another device to impose absolute liability on the defendants.

For almost a century this court has followed a consistent policy against imposing absolute liability except in very few instances. *Brown* v. *Collins*, 53 N.H. 442 (1873); *King* v. *Association,* 100 N.H. 212, 216, 123 A.2d 151, 155 (1956); *Dumas* v. *State Mut. Auto Ins. Co.*, 111 N.H. 43, 274 A.2d 781 (1971). The rule of absolute liability for trespass "appears to have been repudiated in England, where it was born, and it is safe to say that it is almost at its last gasp in the

United States." Prosser, Law of Torts *s*. 13, at 64 (4th ed. 1971); *see* Restatement (Second) of Torts, *s*. 166 (1965). The above is not a strong inducement for changing our long established policy against imposing absolute liability. Count four in plaintiffs' declarations should be dismissed.

Defendants also moved to dismiss petitions for assessment of damages under RSA 482:23 filed by plaintiffs Raymond and Hazel Moulton and by the town of Stark. This section reads as follows: "Petition for Assessment of Damages. If the land of any person shall be overflowed, drained, or otherwise injured by the use of any dam or addition thereto, and the damage shall not within thirty days after due notice thereof be satisfactorily adjusted by the party erecting or maintaining the dam or increase therein, either party may apply by petition to the superior court in the county or counties where such damage arises to have said damage that has been or may thereafter be done assessed."

Section 23 along with the accompanying sections 24-29 originated in Laws 1868, ch. 20. They later became incorporated in the statute governing mills and milldams. G.L. (1878), ch. 141. They remained such until made a part of RSA ch. 482 by its predecessor Laws 1937, ch. 133. This court has interpreted these provisions as being in the nature of eminent domain. "This statutory proceeding provides for the assessment of damages when the mill owner exercises the flowage right given by the mill act." *Chapman* v. *Company*, 67 N.H. 180, 181, 38 A. 16, 17 (1892). It is not intended to be for the recovery of damages for an act of wrongful flowage. In such a case there was a common-law right of action for damages. *Light* & *Power Co.* v. *Hobbs*, 72 N.H. 531, 533, 58 A. 46, 47 (1904); *Spencer* v. *Company*, 78 N.H. 468, 101 A. 528 (1917); 2A Nichols, Eminent Domain *s*. 7.623 (3rd ed. 1970). A statutory right of action now exists under RSA 482:42. Plaintiffs' petitions seek to recover damages resulting from a tortious flooding of their land and do not come within the purpose of RSA 482:23 and defendants' motions to dismiss them should be granted.

Lastly we consider defendants' motion to dismiss such parts of the Moultons' law actions claiming damages to land subject to reserved flowage rights in favor of the defendants. A deed

to a predecessor in title of the Moultons reserved to the grantor, a predecessor in title of the defendants, the following: "All flowage rights on said farm and said purchaser shall not hold said . . . [grantor] its successors and assigns responsible for any damage caused by flowage from any cause whatsoever; meaning that said . . . [grantor] holds the same rights as far as damage to said farm is caused by water, logs or from any other cause as though owned by said . . . [grantor] . . . . "

Defendants take the position that the above language can only be construed as reserving to their predecessor an absolute right of flowage which covered the flooding in this case. Plaintiffs, on the other hand, maintain that the flowage easement reserved must be construed in the light of the following prevailing rule in this State governing such easements: " 'The right of the easement owner and the right of the landowner are not absolute, irrelative, and uncontrolled, but are so limited, each by the other, that there may be a due and reasonable enjoyment of both.' " *Chapman* v. *Company*, 74 N.H. 424, 68 A. 868 (1908); *Goddard* v. *Company*, 82 N.H. 225, 131 A. 601 (1926).

Defendants properly maintain that the meaning and legal effect of a deed is a question to be determined by this court. *Kennett Corporation* v. *Pondwood Co.*, 108 N.H. 30, 226 A.2d 783 (1967). However, it is also well established law that in arriving at what a reservation in a deed means the conditions which existed at the time of its execution are an important consideration. *Flint* v. *Union Water Power Co.*, 73 N.H. 483, 62 A. 788 (1906); *Spaulding* v. *Clark*, 104 N.H. 30, 32, 177 A.2d 400, 401 (1962); *State* v. *Ladd*, 110 N.H. 381, 383, 268 A.2d 894, 895 (1970). We are unable to determine from the language of the deed alone the nature of then existing flowage rights or of those intended to be reserved, or whether the reserved rights protect defendants against liability for the occurrence of May 20, 1969, the question in this case. Hence defendants' motion in advance of trial to dismiss that part of the Moultons' action for damages to their land subject to the reserved flowage rights should be denied.

*Remanded.*

All concurred.